(121 App. Div. 77)

### INTERNATIONAL RY. CO. v. CENTRAL ICE CO..

(Supreme Court, Appellate Division, Fourth Department.   July 9, 1907.)

CARRIERS—SWITCHING CARS—CONTRACT—BREACH OF RECOVERY—MEASURE.

> A contract required a carrier to switch defendant's cars at specified rates per car, bound defendant to pay for not less than 500 cars in each year at $4 a car, and provided defendant should obtain all necessary consents to the construction of the switches, pay for grading, etc., and the carrier should pay for the iron, electrical equipment, etc., and that defendant should furnish the carrier crushed stone at a specified rate.  *Held,* that the switching rates specified were influenced by the other provisions of the agreement, and the carrier may recover compensation according to the strict terms of the contract for defendant's failure to furnish 500 cars in any one year, being not restricted to actual loss sustained.

Submission of controversy, under Code Civ. Proc. § 1279 et seq., by the International Railway Company against the Central Ice Company.   Judgment for plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Norton, Penney & Sears, for plaintiff.

August Becker, for defendant.

WILLIAMS, J.   Judgment should be ordered for plaintiff for $2,-640, with interest on $1,228 from June 1, 1904, on $872 from June 1, 1905, and on $540 from June 1, 1906, without costs.

The facts, stated as briefly as practicable, are as follows:   The parties are corporations located at Buffalo.   The plaintiff operates a street railway in that city, and a line therefrom to Depew and Lancaster, by electricity and overhead trolley system.   Over the lines to Depew and Lancaster it carries no freights, and switches and hauls no freight cars, except under the contract with defendant.   The defendant carries on an ice business in the city of Buffalo, and has an icehouse at Lancaster. July 31, 1903, these parties made a written contract whereby it was agreed that the railway company would switch cars between the icehouse and quarry and the Buffalo terminal for $5 per car loaded movement, and between the icehouse and quarry and the Lehigh Valley switch for $4 per car, and between the Lehigh Valley switch and the Buffalo terminal for $4; and whenever the $4 per car business amounted to 600 cars in any one year the railway company would refund to the ice company 50 cents per car on such $4 car business; that the ice company guarantied to pay for not less than 500 cars loaded movement at $4 per car each year, but any amount paid for a deficit in any one year should be credited upon any surplus the next subsequent year (the term of the agreement being five years); that payments to the railway company should be made on the 1st day of each month; that, in consideration of the reduced rate at which the cars are hauled and the services are rendered, the railway company should not be liable for damages caused by detention or delay, or in handling, or to cars or their contents by negligence or otherwise; that the ice company should furnish a bond for $10,000 for its performance of the agreement, and payments to be made by it, and individual liability of stock-

holders of parties would be waived; that the ice company should procure all the necessary consents to the construction and operation of the switches and sidings, should furnish and maintain all cars, and all land for the switches and sidings, pay for all grading, ties, ballasting and laying of the tracks, and maintaining the same; that the railway company should pay for the iron and electrical equipment, and maintenance of the same, for the switches and sidings, and should be the owner of the same. It was further agreed that the railway company should purchase from the ice company, and the latter company should furnish, all the crushed stone the railway company should require for its use upon its road, f. o. b. railway company's cars at the quarry switch, at 60 cents per yard, except that the railway company should have the privilege of using stone from the quarries owned or leased by it, and of buying 3,000 yards of stone per year from other parties; and, if the ice company should be unable to furnish the stone upon reasonable request or notice, the railway company might buy elsewhere at market prices, and the ice company should pay the excess therefor over 60 cents per yard, but the railway company should not use to exceed 5,000 yards the first year; the ice company should be relieved from liability as to crushed stone only by the act of God, or matters absolutely beyond its control. The plaintiff has fully performed and been ready to perform all its conditions. The ice company furnished cars for hauling only the following numbers:

From June 1, 1903, to June 1, 1904......................................193 cars.
   "     "    " 1904, "    "   " 1905......................................282   "
   "     "    " 1905, "    "   " 1906......................................365   "
                                                                          ———
                                                                          840

The fourth and fifth years had not expired when this submission was made in November, 1906. The ice company has paid the railway for all cars actually hauled, but has failed to pay for the deficit of cars; 1,500 less 840, being 660 cars.

The question we are required to answer upon this statement of facts is whether judgment shall be rendered in favor of the plaintiff for $2,640, with interest on $1,228 from June 1, 1904, on $872 from June 1, 1905, and on $540 from June 1, 1906, in accordance with the strict terms of the agreement, or only to such actual loss as plaintiff shall have suffered by reason of the failure of defendant to furnish cars to be hauled. If it shall be necessary to ascertain the amount of such actual loss, in order to render judgment, it is agreed that may be done by a reference. It seems to us the terms of the contract measure the amount the plaintiff is entitled to recover. The mutual covenants of the parties were abundant consideration for each other. Each party furnished a part of the property and equipments necessary to carry out the agreement. The price paid for the hauling of the cars was influenced and controlled by the other provisions of the agreement. It is recited that the prices are at reduced rates, and then the railway company agreed to purchase crushed stone of the ice company as a part of the agreement in question. A large number of cars could be hauled at less expense than a small number. The price of each car fixed would be governed by the number of cars. We see no reason

why the whole agreement should not be enforceable by both parties according to its terms. If the railway company is to be compelled to relinquish a part of its benefits under the agreement, how can it be compelled to perform the other provisions, as to crushed stone and hauling cars the remaining years the agreement was to run?

To illustrate: Suppose at the end of the second year the rights of the parties had been submitted to the court for determination, and we had then held the railway company could not enforce the provisions as to compensation for hauling cars contained in the agreement, but could only recover its actual loss; could the railway company then be held to the further performance of the contract as to hauling cars or purchasing stone? It only agreed to performance of its part in the agreement upon the performance by the ice company of its part; and if the ice company refused to perform its part, or the court held it need not do so, then certainly the agreement could be terminated at the election of the railway company. If we are right in this illustration, then certainly the court had then, and has now, no power to relieve the ice company from the performance of the agreement according to its terms as clearly expressed. It does not seem to us, in this view of the case, we need to consider many adjudicated cases. None of them have the elements of fact found here and they are clearly distinguishable from this case. The parties deliberately made the agreement. The court has no power to change that contract or relieve either party from the performance thereof according to its terms. It is not a question of damages, but of compensation for services to be rendered. If it is a question of damages at all, then it should be said the damages were by the agreement stipulated by the parties.

Judgment ordered for the plaintiff for the sum of $2.640, with interest on $1,228 from June 1, 1904; on $872 from June 1, 1905, and on $540 from June 1, 1906, without costs of this submission to either party. All concur.